**BANGERTER FRAZIER GROUP**
William E. Frazier (UT Bar No. 11447)
912 W 1600 S, Suite A-200
St. George, Utah 84770
Telephone: (435) 628-7004
Facsimile: (435) 673-1964
*Counsel for Plaintiff,* Ju Ying Liu,

**If you do not respond to this
document within applicable
time limits, judgment could be
entered against you as requested.**

---

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JU YING LIU, and others similarly situated, | |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| JESSICA DAYTON, ASIAN MARKET COMPANY, INC., EIGHT MOONS, LLC, SANDEEP KUMAR, AND CEDAR HEIGHTS CITY, LLC., | Case No. _____ |
| | Judge: _____ |
| Defendants. | |

## I.  **INTRODUCTION**

1.      This is an individual and collective action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (hereinafter "FLSA"), to recover unpaid overtime wages on behalf of Plaintiff, JU YING LIU (hereinafter "Plaintiff" or "LIU"), and all others similarly-situated to Ms. Liu, who were formerly, or are currently, employed as hourly paid employees by Defendants, JESSICA DAYTON and ASIAN MARKET COMPANY, INC (hereinafter referred to as "The Employer Defendants"). Plaintiff also brings related federal and state law claims against the Defendants arising from the same series of transactions having a factual nexus to the primary FLSA claims including for breach of contract, an accounting, and recission.

2.      The Employer Defendants employed within the District of Utah numerous

employees to perform various tasks in furtherance of the operation of Defendants' businesses. These employees performed hourly non-exempt work and were willfully not paid overtime, intentionally misclassified as exempt employees to avoid FLSA payment requirements, and had illegal deductions from their pay to cover Green Card and/or H-1B Visa costs of the Defendants.

3.      Throughout the liability period, Defendants have owned and operated businesses where Plaintiffs worked. Plaintiff LIU worked for EMPLOYER DEFENDANTS and assisted in the preparation of opening Eight Moons Thai and Sushi ("Eight Moons") within the District of Utah.

4.      In at least three years prior to the filing of this Complaint, and continuing, (hereinafter "Liability Period"), Defendants had policies and practices to require its employees to work more than 40 hours in a particular week without overtime compensation.

5.      Since inception, Eight Moons has operated in such a way to fail to compensate employees for overtime compensation and had engaged in tip conversion as described below.

6.      Pursuant to the FLSA, Plaintiff, on behalf of herself and all other similarly situated employees to her who were formerly, or are currently, employed as hourly paid employees for the Employer Defendants during the liability period, seeks unpaid overtime wages, minimum wage, liquidated damages for each Plaintiff, pre-judgment interest, post-judgment interest and attorneys' fees and costs from each of the Employer Defendants.

7.      Plaintiffs will request the Court to authorize concurrent notice to all hourly paid employees who are employed by the Employer Defendants or Eight Moons who were so employed during the liability period, informing them of the pendency of this action and their right to opt into this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b).

## II.  JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs have asserted a claim pursuant to the FLSA.   Pursuant to 28 U.S.C. Section 1367, Plaintiff asks this district court to exercise supplemental jurisdiction over the other claims herein as they are so related to the federal question claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties including Cedar Heights City, LLC and one of its principals, Sandeep Kumar.

### III.  VENUE

9.     Venue is proper in this Court under 28 U.S.C. § 139l(b)(l) because Defendants reside and conduct business in this District and committed acts that gave rise to the claims in this case within the District of Utah.

### IV.    PARTIES

### THE PLAINTIFFS

10.     Plaintiffs were and are at all material times residents of the State of Utah and county and worked as hourly employees for the Employer Defendants, JESSICA DAYTON and ASIAN MARKET COMPANY in Utah.

11.     Plaintiffs, at all material times, were covered, non-exempt employees of the Employer Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e) and (g).

12.     The Employer Defendants employed Plaintiffs as hourly employees, cashiers, stockers, ordering staff, or other similar but unnamed roles in non-exempt capacities.

13.     During the Liability Period, Plaintiffs and those similarly situated hourly-paid employees were, at times, required to work more than 40 hours per week, but would only

receive straight time pay or less for all hours worked.

14.    During the Liability Period, Plaintiffs, and those similarly situated hourly-paid employees, complained to their supervisors about not receiving their normal pay, overtime compensation, but nothing was ever done to remedy the problem.

<u>THE DEFENDANTS</u>

15.    Defendant, Jessica Dayton, is an individual and resident of the State of Utah and the employer of the Plaintiffs in this action as defined by the FLSA. To the degree that she was not a technical employer, she was the decisionmaker for employer defendants and the person who actually made willful decisions to thwart the requirements of the FLSA.

16.    Defendant, Asian Market Company is a Utah corporation and is an enterprise engaged in an industry affecting commerce, and is an employer as defined by 29 U.S.C. § 203(d) and (s)(l), which has employees subject to the provisions of the FLSA, 29 U.S.C. § 207, in the locations where Plaintiffs were employed and whose principal and registered agent for service of process was, at all relevant times, Jessica Dayton in Provo, Utah.

17.    Defendant, EIGHT MOONS, LLC, is a Utah limited liability company and is an enterprise engaged in an industry affecting commerce, and is an employer as defined by 29 U.S.C. § 203(d) and (s)(l), which has employees subject to the provisions of the FLSA, 29 U.S.C. § 207, in the location where Plaintiffs were employed and whose registered agent for service of process is Wanwisa Tiboonbun who is located at 724 W. 1720 N. APT 302 PROVO, UT 84604.  Plaintiff purportedly acquired a 15% interest in Eight Moons, LLC under dubious circumstances described herein. Plaintiff seeks a recission of such agreement and damages for the acts of EIGHT MOONS and its ostensible principals.

18.    Defendant, CEDAR HEIGHTS CITY, LLC, is a Utah limited liability company whose principal and registered agent for service of process is Jessica Dayton who can be

located at 1659 N. 2250 W., Provo, Utah 84604.

19.    Defendant, Sandeep Kumar ("KUMAR"), is a principal of Cedar Heights City, LLC. KUMAR operates certain rental properties within Iron County, Utah. Said rental properties are co-owned by DAYTON and plaintiff LIU.

20.    At all times material hereto, Employer Defendants were an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(l) with annual gross sales in excess of $500,000 within the meaning of the FLSA, and are thus subject to the requirements of the FLSA.

21.    Defendant, Jessica Dayton is, and/or was at all relevant times, the owner and/or manager of each Defendant and directly managed the Plaintiffs and similarly situated employees. At all times material hereto, Jessica Dayton was engaged in commerce within the meaning of 29 U.S.C. § 203(s)(l) with annual gross sales in excess of $500,000 within the meaning of the FLSA, and is thus subject to the requirements of the FLSA as the owner and manager of the businesses at issue including but not limited to Asian Market.

## V.  <u>GENERAL FACTUAL ALLEGATIONS</u>

22.    Plaintiffs hereby incorporate the allegations in Paragraphs 1-21 above as though fully set forth herein.

23.    The allegations in Paragraphs 1-21 above and herein, occurred during the liability period.

24.    The Employer Defendants did not pay their hourly-paid employees, including LIU, overtime as required by the Fair Labor & Standards Act ("FLSA") (as amended), 29 U.S.C. §216(b) and 28 U.S.C. §§1331, 1337. All hourly paid employees employed by the Employer Defendants are and were not exempt from the overtime requirements of the FLSA

pursuant to 29 U.S.C. § 213(a)(l) despite these Defendants' mischaracterizations of the Plaintiffs' FLSA non-exempt employment status.

25.    All hourly paid employees employed by the Employer Defendants are entitled to be paid minimum wage and overtime compensation when, as they did, work more than 40 hours during any single workweek, which occurred on many workweeks exposing Employer Defendants to substantial liability.

26.    There are  multiple persons similarly-situated to Plaintiff who are, or were at relevant times, employed as hourly-paid employees for the Employer Defendants during the liability period.

27.    During the liability period, the Employer Defendants willfully and recklessly required their hourly paid employees of Asian Market and Eight Moons to  work over  40  hours per  week  without  receiving  overtime  compensation. On information and belief, the Employer Defendants were made aware that this illegal practice was taking place, but did nothing whatsoever to remedy  the  problem  and ensure that  their hourly  paid  employees  were  paid overtime compensation. Instead, the Employer Defendants falsely misclassified the Plaintiffs as exempt employees in violation of the FLSA

28.    Defendant, Jessica Dayton, served as an employer sponsor for Plaintiff to bring LIU to the United States to work in Dayton's "Asian Market" in Provo, Utah. Dayton was successful in obtaining an H-1B Visa for LIU, and LIU traveled to Utah to work in a position that would be a non-exempt hourly position for Dayton, as opposed to a high-level employee status contemplated and required by the H-1B Visa program. After LIU arrived in Utah, Dayton exploited LIU in several ways in violation of federal and state law as presented herein.

29.    Dayton and the other Employer Defendants committed numerous overt acts in

violation of federal law governing employer/employee relationships including the FLSA, H-1B

Visa sponsorships, classification of exempt versus non-exempt employees under the FLSA, and

record keeping and wage payments required by the FLSA.

30.     The Employer Defendants' willful actions, as an employer of the Plaintiff and

others subject them to liability and Dayton to personal liability including civil penalties, and

attorney fees in a judgment in favor of Plaintiffs.

### H-1B Visa Violations / "Green Card" Violations

31.     Employers are barred from making illegal deductions under the H-1B program. *See*,

generally, 20 C.F.R.§655.731(c)(9) and INA§212(n)(2)(c)(vi)(II). Dayton and the other

Employer Defendants required Plaintiff to reimburse them for expenses and attorney fees

associated with Plaintiff's Visa and "Green Card" process, and Dayton is actively requiring this

from additional workers in direct violation of 20 C.F.R.§655.731(c)(9)(ii) and (iii)(c) and other

statutes.  Dayton created and maintained documents to account for "loans" for "Green Card"

and/or Visa expenses for which Ms. Dayton requires repayment from the Plaintiffs. Dayton

demanded and received payments from Plaintiff in cash and payroll reductions and deductions

Dayton demands immigrant workers to "repay" her up to $14,000 or more per "Green Card"

and/or H-1B Visa sponsorship.   This constitutes, at a minimum, a breach of the

employer/employee relationship of these parties.

32.     For example, Plaintiff paid Dayton $6,000 via direct payments and payroll

deductions or reductions for unlawful recoupment of fees associated with the Green Card and/or

H-1B Visa process in breach of the employment contract between these parties. Willful violation

of the above-referenced statutes can result in substantial civil penalties up to $35,000 per

violation and entitle Plaintiff and the other Plaintiffs to breach of contract damages for these

illegal deductions. Additionally, Dayton completed forms referencing compensation to be paid upon grant of a Green Card and/or H-1B Visa, and from which business entity such funds would be paid. Dayton falsified the information in the application and sponsorship forms, misrepresenting the amount Plaintiff would be paid and the identity of the entity for which Plaintiff would work exclusively and in what capacity also equating to another breach of the agreement between these parties and federal law.

33.     Dayton is actively engaging in similar Green Card and/or H-1B violations as well as FLSA misclassification of exempt versus non-exempt workers' status to skirt applicable wage laws including the FLSA.

34. Ms. Dayton and the Employer Defendants designated, and continue to improperly designate, numerous workers as "exempt" under the FLSA.  Plaintiff and other employees of the Defendants do not meet the exemption criterion set forth by the FLSA. For example, Plaintiff does not qualify for the Executive Exemption because her primary duties did not relate to managing the Asian Market or any department or subdivision thereof, and Plaintiff did not have the authority to hire or fire other employees. Similarly, Plaintiff did not qualify for the Administrative Exemption because her job duties did not relate to the performance of office or non-manual work directly related to the management or general business operations or exercise discretion and independent judgment with respect to matters of significance. The Professional Exemption is likewise inapplicable due to Plaintiff's duties not being those which require advanced knowledge defined as work predominantly intellectual in character or advanced knowledge in a field of science or learning.

35. Plaintiff's position likewise failed to qualify for the Computer Employee

Exemption, Outside Sales Exemption, or Highly-Compensated Employee Exemptions. All Plaintiffs were subject to strict requirements to clock in and out (despite some being purportedly paid a salary). The Plaintiffs did not have independent discretion or permission to make decisions of consequence. Employer Defendants used exempt classification as a means to avoid paying overtime wages to Plaintiffs.

36. For many weeks Plaintiffs worked more than 40 hours per week without being compensated for overtime.

### Recordkeeping and Documentation Violations

37. The FLSA has promulgated numerous recordkeeping requirements, which are elucidated at 29 C.F.R. Part516, et seq. They include, in pertinent part:

- The time and day of week when an employee's workweek begins;

- Hours worked by an employee each day;

- Total hours worked each workweek;

- Regular hourly payrate;

- Total daily or weekly straight-time earnings;

- Total overtime earnings for the workweek; and

- All additions to or deductions from the employee's wages.

38. Here, Dayton devised a scheme to, without warning or notice, deduct from wages expenses for "loans" given for Green Card and/or H-1B-associated fees. Further, Dayton would pay Plaintiff a meandering salary, with adjustments and deductions made on a whim and without reason or notice.

39. For example, Dayton stated on Visa application forms that Plaintiff's salary would be $3,900/month. Then Dayton unilaterally reduced Plaintiff's pay to $3,300/month.

40. Incredibly, Dayton would demand that some of Plaintiff's salary be paid back to Dayton in cash for a number of reasons, including but not limited to Plaintiff "not bringing in enough money" for various businesses or the Asian Market.  Dayton used improper documentation methods as a means of thwarting FLSA rules for Plaintiffs. This fact alone makes it likely that a collective action would be required herein.

### Asian Market

41.    Dayton convinced Plaintiff to pay her $28,000 in cash in various installments. These installments were paid for Plaintiff to purportedly acquire an interest in the Asian Market. Though the installments were purportedly to acquire a percentage of ownership in the Asian Market, Plaintiff never received any indicia that her name was ever affixed to any corporate document or filing to make a percentage of a reality. This was evidenced by statements from Dayton indicating that she had sold the Asian Market without compensation to Plaintiff. Plaintiff received inconsistent and spurious "investment return" payments from Dayton with no documentation as to how they were calculated. At minimum, Plaintiff is entitled to an accounting of the Asian Market's profits and losses from the time of the 2019 payment to the present.  And, Plaintiff's FLSA claims arose prior to her purported investment in Asian Market's which was sold to an insider with no compensation to Plaintiff.

### Cedar Heights City, LLC

42. Plaintiff, through her relations with Dayton is the record owner of a ten percent (10%) interest in the following Iron County, Utah parcels as shown below. Dayton is a 45% owner of such parcels.

### Warranty Deed

43. Dayton is shown as holder of an undivided 45% interest in these properties, Sandeep Kumar is also shown as a 45% undivided owner and Plaintiff, Ju Ying Liu, holds a 10% undivided interest in the following tracts of land in Iron County Utah:

- B-1203-0200-0000
- B-1203-0201-0000
- B-1203-0202-0000
- B-1203-0203-0000
- B-1203-0204-0000
- B-1203-0206-0000
- B-1203-0207-0000
- B-1203-0208-0000
- B-1203-0209-0000

44. Plaintiff paid Dayton $10,000 in cash in or around June 2021, $13,333 towards a bank loan obtained by a non-party named Kent Heideman in or around October 2021, and another $13,333 to non-party named Kent Heideman in or around January 2023 for her interest in these properties. In or around February 2022, Ms. Dayton demanded $600 toward remodel costs from Plaintiff. That sum ballooned to over $1,550 due to alleged "overages" reported by Ms. Dayton. Despite the properties generating revenue, Ms. Dayton has only paid Plaintiff one payment of "$800", but she unilaterally withheld $400 for "debt owed to Jessica". This property is not owned by Cedar Heights City, LLC, and cannot be conveyed with Plaintiff on title. Ms. Dayton is aware of the profits and losses associated with the property, as well as the significant appreciation in the value of the properties. Dayton and Kumar are in charge of collecting rents; however, they have provided no information whatsoever to Plaintiff regarding income, expenses, or payments on the return of investment. On information and belief, payments to Cedar Heights City, LLC, which is not even a vested owner of the above-referenced parcels, are a part of a scheme to misdirect wages owed to Plaintiff.

**Eight Moons, LLC**

45. Plaintiff became extremely concerned about the operation of this business when Dayton and the Employer Defendants unilaterally promulgated rules for investors and employees that violate federal law, including the employer keeping tips earned by service employees. Dayton reduced her plan to violate federal law in writing, in direct violation of the 2020 "Tip Final Rule" at 85 FR 86756, which became effective on April 30, 2021. That rule provides "an employer cannot keep employees' tips under any circumstances; managers and supervisors also may not keep tips received by employees, including through tip pools". The Civil Money Penalty Final Rule dated September 24, 2021, at 86 CFR 52973 modifying the Tip Final Rule became effective on November 23,2021. The Civil Money Penalty Final Rule provided that the Department of Labor can assess Civil Money Penalties against employers who violate the FLSA by taking tips earned by their employees, whether those violations are repeated or willful.

46. Dayton and Eight Moons have continued with their plan to violate the FLSA at Eight Moons. Plaintiff cannot countenance such illegal, reckless, and unscrupulous behavior. Plaintiff has invested approximately $35,000 in Eight Moons for a 15% share of the company. Of that amount, Plaintiff paid Ms. Dayton approximately $16,000 out-of-pocket. Ms. Dayton, after the fact, told Plaintiff that the $16,000 was applied to Green Card and H1B Visa expenses, despite the fact that Plaintiff directed the money toward the Eight Moons investment. The remaining amounts were from a loan that Dayton coerced Plaintiff into signing. Plaintiff seeks a recission of such "investment" on grounds of fraud and breach of contract.

47. Dayton claimed that the loan was needed for, among other things, helping to repay the "loan" for immigration lawyer expenses incurred by the Asian Market and cost overruns at Eight Moons.

### Defamation & Electronic Harassment

48. Dayton has and continues to make defamatory statements about Plaintiff in group chats and other writings, as well as verbal statements to persons that know the involved parties. This has caused Plaintiff significant emotional distress necessitating medical intervention and other damages.

49. Plaintiff, through counsel, advised counsel for Ms. Dayton to cease all communications; however, Dayton continues to contact Plaintiff via text message in violation of UCA 76-9-201.

50. In text messages and other writings published to third persons, Dayton has published false statements about Plaintiff that are in defamatory in nature, including false accusations about Plaintiff's actions and statements about Plaintiff's dishonesty.

51. The statements made by Dayton about Plaintiff were not published or true.

52. The defamatory statements caused Plaintiff to suffer emotional distress and other damages presumed at law.

53. Plaintiff demanded that Dayton cease all defamatory statements relating to Plaintiff which continues in addition to Dayton demanding money from Plaintiff.

## VI.   COUNT I -FLSA: Unpaid Wages, Overtime, Misclassification and Recordkeeping Violations Against Each Employer Defendant

54. The allegations in the preceding paragraphs of the Complaint are incorporated by reference herein.

55. By their actions alleged above, the Employer Defendants willfully, knowingly

and/or recklessly violated the provisions of the FLSA, which requires minimum wage overtime compensation wages to non-exempt employees, 29 U.S.C. § 207.

56.     As a result of the unlawful acts of Defendants, Plaintiffs and all persons similarly situated to them have been deprived of standard wage income and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts in addition to liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs.

57.     Plaintiffs are owed wages, overtime, interest, liquidated damages and attorney's fees for the FLSA violations of the Employer Defendants.

58.     The Employer Defendants violated the FLSA recordkeeping requirements by failing to document and keep records of the Plaintiffs': time and day of week when an employee's workweek begins; hours worked by an employee each day; total hours worked each workweek; regular hourly payrate; total daily or weekly straight-time earnings; total overtime earnings for the workweek; and all additions to or deductions from the employee's wages.

59.     The Employer Defendants also blatantly violated the FLSA by misclassifying as exempt, the Plaintiffs as exempt employees to avoid FLSA payment requirements causing damage to the Plaintiffs.

**VII.    COUNT II:  Green Card and/or H1-B Wage Law
Violations Against Each Employer Defendant**

60.     The allegations in paragraphs 1-59 of the Complaint are incorporated by reference herein.

61.     The H-1B is a temporary (nonimmigrant) visa category that allows employers to petition for highly educated foreign professionals to work in "specialty occupations" that require at least a bachelor's degree or the equivalent. Jobs in fields such as

mathematics, engineering, technology, and medical sciences usually qualify.

Employer Defendants, as employers of the Plaintiffs, made illegal deductions under the H-1B program from the wages due the Plaintiffs or otherwise demanded payments in violation of the laws governing the H-1B program at issue. *See*, 20 C.F.R.§655.731(c)(9) and INA§212(n)(2)(c)(vi)(II). These Defendants required Plaintiff to reimburse the Defendants including Dayton for expenses and attorney fees associated with Plaintiffs' Visa process and Dayton is actively requiring this from additional workers in direct violation of 20 C.F.R.§655.731(c)(9)(ii) and (iii)(c).

62.     The Declaratory Judgments Act grants a district court jurisdiction to determine any question of construction or validity of a statute that affects the rights, status, or other legal relations of any person and to declare that person's rights, status, or legal relations under the statute. Utah Code Ann. § 78-33-2 (2002).

63.     A declaratory judgment action or claim exists where there is (1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectible interest residing with the party seeking relief, and (4) issues ripe for judicial determination.

64.     Here, Plaintiffs meet the requirements to state a declaratory judgment claim because a justiciable controversy exists between parties whose interests are adverse because employers are barred from making illegal deductions under the H-1B program. Dayton and the other Employer Defendants required Plaintiffs to illegally reimburse them for expenses and attorney fees associated with Plaintiffs' Visa process. Dayton demanded and received payments from Plaintiffs in cash and payroll reductions and deductions to "repay" up to $15,760 per H-1B Visa and Green Card sponsorship. Plaintiff has made payments toward this amount, but Ms. Dayton has claimed that amounts are still owing. Ms. Dayton also made unauthorized payroll deductions from Plaintiff allegedly toward repaying amounts owed for reimbursement of H-1B

Visa and Green Card sponsorship.

65.     A legally protictible interest residing with the party seeking relief exists

as federal law precludes the illegal deductions and payments at issue related to Plaintiffs' H-1B

applications.

66.     These issues are ripe for judicial determination to clarify and determine

the rights and obligations of these parties related to the illegal wage deductions under the H-1B

program at issue for each of the Plaintiffs.


### VIII.    COUNT III:  Breach of Contract and Accounting
### Plaintiff Against Dayton Asian Market Company

67.     The allegations in paragraphs 1-66 of the Complaint are incorporated by

reference herein.

68.     Plaintiff paid Dayton $28,000 in cash for a purported investment in Asian

Market Company, to purportedly acquire an interest in the Asian Market Company. Plaintiff

has received no official corporate indicia of such ownership and inconsistent and spurious

"investment return" payments from Dayton with no documentation as to how they were

calculated. At minimum, Plaintiff is entitled to an accounting of the Asian Market's profits and

losses from the time of the 2019 payment to the present. The Asian Market, on information and

belief, was sold by Dayton to a relative, and no payment was made to Plaintiff, calling into

question whether Dayton issued any legitimate interest in Asian Market to Plaintiff.

69.     An agreement for Plaintiff to acquire, and Dayton and Asian Market to issue an

ownership interest, exists between Plaintiff and Asian Market Company.

70.     Plaintiff completed performance under such contract.

71.     On information and belief, Plaintiff alleges that a unity of interest existed

between Dayton and Asian Market, and the existence of a corporate shield or veil constitutes a
fallacy, in that Dayton freely used Asian Market funds for personal and non-business expenses,
and failed in any semblance of upkeep of corporate formalities to justify a separateness of
existence. Defendants herein Company breached their obligations to Plaintiff by failing to
provide payments to Plaintiff for profits or sales proceeds.

72.     Plaintiff is also entitled to an accounting of Asian Market Company as an
investor and purported principal in the company. On information and belief, either no formal
interest was ever transferred by Defendants to Plaintiff, or any such interest was transferred
only at or near the conclusion of Plaintiff's employment with Asian Market.

73.     Plaintiff and the Defendant had a fiduciary or trust-based relationship
concerning the general subject matter of the controversy.

74.      Defendant breached the duty imposed by this relationship respecting property
in which Plaintiff has an interest and Plaintiff is entitled to a recission of this purported
investment.

75.     Plaintiff made a demand for records and an accounting upon
Defendant that was ignored.

IX.    **COUNT IV:  Breach of Contract / Rescission Against Eight Moons, LLC**

76.     The allegations in paragraphs 1-75 of the Complaint are incorporated by
reference herein.

77.     A purported contract exists between Plaintiff and Eight Moons, LLC.

78.     Plaintiff completed performance under such contract in terms of contributing
payments for equity in Eight Moons, but lacked knowledge of Dayton's plan to violate federal
law with regard to compensation of employees.

79.     Upon learning that Eight Moons planned to violate federal law, Plaintiff

objected to running the business as Dayton planned, and refused to participate in Dayton's scheme with regard to running Eight Moons.

80.     Plaintiff is also entitled to an accounting of Eight Moons, LLC as an investor and purported principal in the company.

81.     Plaintiff and the Defendant had a fiduciary or trust-based relationship concerning the general subject matter of the controversy.

82.     Defendant breached the duty imposed by this relationship respecting property in which Plaintiff has an interest, including but not limited to, on information and belief, causing Plaintiff's name and signature to appear on a lease agreement for Eight Moons Restaurant that was renegotiated by Dayton after Plaintiff objected to the operating scheme mandated by Dayton.

83.     Plaintiff made a demand for records and an accounting and evidence of authority for affixing her signature upon a lease document. These requests were ignored.

84.     Plaintiff has no adequate remedy at law for the relief requested herein and is entitled to a recission of this relationship.

## X.    COUNT V:  Breach of Contract and Accounting
### Plaintiff Against CEDAR HEIGHTS CITY, LLC., DAYTON, and KUMAR

85.     The allegations in paragraphs 1-84 of the complaint are incorporated by reference herein.

86.     A contract exists between Plaintiff and CEDAR HEIGHTS CITY, LLC, DAYTON, and KUMAR in which each of them would contribute toward the construction and rental of dwelling units in Iron County, Utah, with payments to be made to the various owners periodically.

87.     Defendants have not operated Cedar Heights City, LLC as intended, in that the

ownership of the parcels has not vested into the entity, and the funds from rental proceeds are not being divided in accord with the ownership arrangement.

88.    Plaintiff completed performance under such contract by making the necessary payments.

89.    This Defendant breached the contract causing damages to Plaintiff.

90.    Plaintiff is also entitled to an accounting from Defendants as an investor and purported owner in the company including tracts of land allegedly owned by such company.

91.    Plaintiff and the Defendants had a fiduciary or trust-based relationship concerning the general subject matter of the controversy.

92.     Defendants breached the duty imposed by this relationship respecting property in which Plaintiff has an interest.

93.    Plaintiff made a demand for records and an accounting upon Defendant that was ignored.

94.    Plaintiff has no adequate remedy at law for the relief requested herein and seeks a recission of this relationship.

### XI.    COUNT VI:  Defamation: Plaintiff Against Jessica Dayton

95.    The allegations in paragraphs 1-94 of the Complaint are incorporated by reference herein.

96.    Dayton made defamatory statements regarding the Plaintiff orally and in writing, impugning her honesty and competence.

97.    Such defamatory statements were published to, at minimum, the principals of Eight Moons, and on information and belief, employees of Asian Market.

98.     The defamatory statements made by Dayton were made intentionally, with knowledge of their falsity.

99.     Dayton intended to defame Plaintiff by advising the third-parties, without justification or privilege, that Plaintiff was dishonest and incompetent.

100.    Dayton's defamatory statements were injurious to Plaintiff in that they caused presumed damages and special damages including emotional distress and pecuniary loss according to proof.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and all employees similarly situated who join in this action pray for this Court:

a.     To authorize the issuance of notice at the earliest possible time to all hourly employees who were employed by Defendants during the three years immediately preceding the filing of this action. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit if they worked more than 40 hours without receiving overtime compensation during the Liability Period;

b.     To declare that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. 207, as to the Plaintiff and persons similarly situated;

c.     To declare that Defendants' violations of the FLSA to be willful;

d.     To award Plaintiffs, and other similarly situated current and former hourly employees of the Employer Defendants, damages for the amount of the unpaid hourly salaries, overtime wages and liquidated damages, subject to proof at trial;

e.     An award of prejudgment interest;

f.     To make the same declarations and awards as prayed for in paragraphs A-E

- 20 -

above as to all persons who opt into this action pursuant to 29 U.S.C.§ 216(b);

g.    To award Plaintiffs, and other similarly situated current and former hourly employees, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

h.    A declaration of rights and remedies (declaratory judgment), accounting and/or rescission in favor of Plaintiff and against Asian Market Company, Eight Moons, LLC and CEDAR HEIGHTS CITY, LLC;

i.    Judgment in favor of Plaintiff on each individual claim in the Complaint including her claims for defamation, accounting and breach of contract.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demands a jury trial of all matters so triable as a matter of right.

Respectfully submitted,

WILLIAM E. FRAZIER (SBN: 11447)
BANGERTER FRAZIER GROUP
912 W. 1600 S., Suite A200
St. George, Utah, 84770

DATED this 30th day of January, 2023

Attorneys for Plaintiffs

By:    /s/ William E. Frazier
       William E. Frazier