IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Ju Ying Liu.,<br><br>    Plaintiff,<br><br>v.<br><br>Jessica Dayton, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 4:23-cv-0010<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment ("Motion")[1] filed by Defendants and Counterclaimants Jessica Dayton, Asian Market Company, Inc., Eight Moons, LLC, Sandeep Kumar, and Cedar Heights City, LLC's ("Defendants"). As relevant to this Motion, Plaintiff Ju Ying Liu pursues various claims against Defendants under the Fair Labor Standards Act ("FLSA").[2] In the Motion, Defendants argue: (1) Plaintiff lacks evidence of any FLSA minimum-wage claim; (2) Plaintiff cannot assert a private claim for FLSA recordkeeping violations; (3) Plaintiff's FLSA claims are precluded by the Immigration and Naturalization Act ("INA") because Plaintiff worked pursuant to an H-1B visa; and (4) Plaintiff cannot establish a violation of the overtime provisions of FLSA because she was an exempt employee. The Court

---

[1] ECF No. 46.
[2] Ms. Liu also pursues various state claims and Defendants allege various counterclaims under state law. *See* Amd. Compl., ECF No. 32; Counterclaim, ECF No. 33. These claims are not addressed in the motion, other than a request the Court decline to exercise supplemental jurisdiction in the event it enters judgment on all federal claims. *See* ECF No. 46 at 13–14.

held a hearing on August 19, 2025.  Russell T. Monahan appeared and argued on behalf of Defendants.  Plaintiff appeared and argued on her own behalf.  For the reasons discussed below, the Court will grant Defendants' Motion in part and deny it in part.  The Court will also order the parties to respond to the Court's observations about the summary-judgment record.

## STANDARD OF REVIEW

The Court must grant summary judgment when "the movant shows there is no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once that initial burden has been met the non-moving party must demonstrate the existence of specific material facts in dispute to survive summary judgment.  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).  In resolving a motion for summary judgment, the Court views "the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."  *Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).  Despite this deference, the nonmoving party must nevertheless "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.1999)).  "The mere existence of a scintilla of evidence in support" of the nonmoving party's case is insufficient.  *Anderson*, 477 U.S. at 252.  With these standards in mind, the Court turns to the Motion.

## UNDISPUTED FACTS

The Court finds the following facts are undisputed,[3] and established in this case, pursuant to Federal Rule of Civil Procedure 56(g):

    1.    Defendant Asian Market Company, Inc., employed Plaintiff Ju Ying Liu from October 1, 2020 until June 19, 2022.[4]

    2.    Plaintiff worked in the United States pursuant to an H-1B visa from October 1, 2020, until she received her Permanent Resident Card in May 2022.[5]

    3.    While there is a dispute about whether Plaintiff was told she would be paid on a salary or hourly basis, it is undisputed that Plaintiff was not offered an hourly rate higher than $20.82.[6]

    4.    For the period from October 2020 through the end of October 2021, Plaintiff was paid a monthly salary of $3,900. For the period beginning November 2021 through June 12, 2022 (the last date which Plaintiff claims compensable hours), Plaintiff was paid a monthly salary of $3,600.[7]

---

[3] The material facts set forth in Defendants' Motion are largely undisputed. The parties argue about the details of a certain Department of Labor investigation and the meaning of documents submitted to U.S. Customs and Immigration Services and the Department of labor. The parties have not shown the investigation is legally relevant. *See infra* n.21. The documents speak for themselves, and their authenticity appears undisputed.

[4] Mot. at 2; Opp'n at 2.

[5] *See* Mot. at 2; Opp'n at 2.

[6] *See* Mot. at 4; Opp'n at 7 & Ex. B; Hr'g Mot., Aug. 19, 2025. Again, the Court reiterates that this is the maximum possible rate, not an undisputed rate.

[7] Mot. at 5; Opp'n at 8; Hr'g Mot., Aug. 19, 2025.

## ANALYSIS

In the sections below, headed by Roman numerals, the Court will address: first, the FLSA claims on which Defendants are entitled to summary judgment; second, the reasons Defendants are not entitled to judgment on Plaintiff's FLSA overtime claim; and third, factual issues that appear undisputed and require a response from the parties.

### I. **Defendants are entitled to summary judgment on Plaintiff's minimum-wage claim and any claim for a recordkeeping violation**

As discussed below, Plaintiff cannot establish any unpaid-wage violation, given the number of hours she asserts she worked and the undisputed amount of money she was paid. Additionally, Plaintiff cannot assert any claim for a recordkeeping violation because that provision of the FLSA does not afford a private right of action for such claims. These issues are discussed in the lettered subsections below.

#### a. Plaintiff cannot establish any minimum-wage violation

It is unclear whether Plaintiff intends to pursue an FLSA claim for failure to pay minimum wage. Her Amended Complaint refers to FLSA's minimum-wage requirement and asserts she is "owed wages."[8] Even assuming she asserts such a claim, she has not offered evidence sufficient to support it. The lowest weekly rate Plaintiff received was $812.64.[9] Federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). At this minimum wage, the overtime rate is $10.88 per hour. 29 U.S.C. § 207(a)(1) (requiring hours in excess of forty per week be compensated "at a rate not less than one and one-half times the regular rate").

---

[8] Amd. Compl. ¶¶ 45, 47.
[9] *See* ECF No. 55 at 8 (admitting Plaintiff's monthly salary ranged from $3,600 to $3,900). Dividing $3,600 by 4.43 (the length of a 31-day month expressed in weeks) equals $812.64.

Accordingly, to establish a minimum-wage violation, Plaintiff would need to show she worked over 88 hours in a single week.[10] Based on Exhibit A to the Amended Complaint, which is the only purported evidence of hours Plaintiff worked, she claims, at most, 61 compensable hours in a single week. Thus, there does not appear to be any factual basis for a minimum-wage claim, even assuming Plaintiff attempted to assert one.

### b. Plaintiff cannot maintain a claim for a recordkeeping violation because FLSA does not provide a private right of action for recordkeeping violations

While Plaintiff also asserts recordkeeping violations, FLSA does not create a private right of action for recordkeeping violations.[11] *See* 29 U.S.C. § 216(b) (creating private right of action for FLSA provisions governing retaliation, breastfeeding, wages, overtime, and tips); *see Turner v. Dunkin*, No. 23-2316, 2024 WL 1282463, at *6 (D. Kan. Mar. 26, 2024) ("FLSA 'does not authorize employee suits for violations of the FLSA's recordkeeping requirements.'") (quoting *Elwell v. University Hospitals Home Care Service*, 276 F.3d 832 (6th Cir. 2002)); *Bracamontes v. Bimbo Bakeries U.S.A. Inc.*, No. 15-CV-02324, 2016 WL 5791202, at *3 (D. Colo. Sept. 30, 2016) (noting that several courts have determined that no private cause of action exists

---

[10] To understand why Plaintiff must assert she worked over 88 hours, the Court will briefly recite the calculation for a minimum wage worker. The first forty hours of a given week, multiplied by the minimum wage, $7.25 equals $290. An additional 48 hours of overtime, multiplied by the minimum-wage overtime rate of $10.88, equals $522.24. Adding the $290 for the first 40 hours, plus 522.24 for 48 hours of overtime amounts to $812.24. Plaintiff admits that, at all times, she was paid at least 40 cents more than this (namely a monthly salary of $3,600 which averages $812.64 per week). Accordingly, there can be no minimum wage violation until Plaintiff works over 88 hours.

[11] While the Court is unaware of any case in which the Tenth Circuit has addressed this issue, the Circuit did address a related issue: whether FLSA allows a private action for injunctive relief. The Tenth Circuit held that it did not. *See United Food & Com. Workers Union, Loc. 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1197 (10th Cir. 2000) (holding "[t]he right . . . to sue for injunctive relief under the FLSA rests exclusively with the federal government").

whatsoever to enforce FLSA's recordkeeping provisions) (citing *Castillo v. Givens*, 704 F.2d 181, 198 (5th Cir. 1983), *disapproved of on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). Accordingly, to the extent Plaintiff seeks to recover under the FLSA for any alleged recordkeeping violations, Defendants are entitled to summary judgment because only the federal government may pursue such claims, not private plaintiffs.

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's FLSA claim insofar as Plaintiff pursues any minimum-wage, or recordkeeping, violation.

## II. Defendants are not entitled to summary judgment on the basis of INA preemption nor on Plaintiff's claim for unpaid overtime

As discussed in the lettered subsections below, Defendants have not shown they are entitled to summary judgment on the basis of INA preemption of the FLSA, nor have they met their burden to show Plaintiff is exempt from FLSA's overtime requirements.

### a. Defendants have not supported their argument regarding INA preemption with sufficient legal authority

While Defendants make several accurate contentions about INA's structure and enforcement mechanism for the H-1B visa program, Defendants fail to support their ultimate conclusion that Plaintiff's FLSA claims are "governed by the INA" rather than FLSA.[12] Defendants offer support for related assertions, such as: the INA governs the terms of H-1B visas, the Department of Labor ("DoL") oversees the H-1B program, a Plaintiff seeking review

---

[12] ECF No. 46 at 6–7.

of DoL's action related to an H-1B visa must exhaust certain administrative remedies, and standards governing H-1B visas are not identical to FLSA requirements.[13]

On the other hand, Defendants do not offer sufficient support for their assertion: "The payment of wages to an H-1B employee is governed by the INA not the FLSA."[14] As Judge Kohler noted previously in this case, the Department of Labor has issued informal guidance stating: "Other Federal wage statutes apply to H-1B workers in the same manner as any U.S. worker."[15] Also, the cases Defendants cite in support of their INA-preemption argument, upon scrutiny, fail to provide an adequately foundation for their position. For example, Defendants cite *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 960–61 (S.D. Ind. 2013). A close reading of *Panwar* undermines their position. The *Panwar* court evaluated an FLSA claim brought by a plaintiff who had obtained an H-1B visa, as the Court is asked to do here. Yet, the *Panwar* court did not dismiss the FLSA claim based on plaintiff's H-1B visa. Rather, the *Panwar* court noted that plaintiff sought wages for time spent in non-productive time, which claim did not assert "a right that is protected by the FLSA." That court concluded "[t]he right to payment for non-productive time is a right that is bestowed to H–1B employees under the INA, so any failure to pay such wages would be a violation of the INA, not the FLSA." *Id.* Thus, the

---

[13] *See* ECF No. 46 at 6 (citing, *e.g.*, *Aleutian Cap. Partners, LLC v. Hugler*, No. 16 CIV. 5149, 2017 WL 4358767, at *6 (S.D.N.Y. Sept. 28, 2017), *aff'd sub nom. Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220 (2d Cir. 2020)).
[14] *Id.* Also, as Defendants note, Plaintiff amended her Complaint to remove claims under the INA based on Defendants argument about exhaustion. *See* ECF No. 29, Ex. B.
[15] ECF No. 28 at 7 (quoting Wage & Hour Division of Dep't of Labor, Fact Sheet #62G: Must an H-1B worker be paid a guaranteed wage?, (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/62g-h1b-required-wage).

*Panwar* court did not find that INA precludes FLSA claims. Instead, the *Panwar* court merely noted that plaintiff's claim did not seek to vindicate a right granted by FLSA.

Next, Defendants cite *Gupta v. Perez*, 101 F. Supp. 3d 437, 462 (D.N.J. 2015), which involved a plaintiff (who worked pursuant to an H-1B visa like Plaintiff here) asserting wage claims under INA. This case undermines Defendants' assertion that the FLSA does not apply here. The *Gupta* court concluded its decision with a remark that the plaintiff should bring his "newly-raised claims," including a claim for unpaid wages under FLSA ,"in a separate lawsuit." *Id.* at 461–62. Thus, the *Gupta* case likewise does not support any categorical bar to FLSA claims simply by virtue of Plaintiff working pursuant to an H-1B visa.

Finally, when asked about this issue during oral argument, Defendants were not able to offer any additional authority to support their assertion that the INA precludes Plaintiff's FLSA claims.[16] Based on the foregoing, the Court rejects Defendants' argument that the INA precludes Plaintiff's FLSA claims because Defendants have not provided adequate legal support.

    **b. Defendants have not met their burden to establish Plaintiff was exempt from FLSA's overtime provisions**

Defendants have not met their burden to prove that any exemption applies to Plaintiff and, consequently, have not shown they are entitled to summary judgment on Plaintiff's claim for unpaid overtime.[17] To show Plaintiff belongs to an exempt class of workers not subject to FLSA's overtime requirements, "[t]he employer bears the burden to prove that an exemption

---

[16] Hr'g Mot., Aug. 19, 2025.
[17] Given some portion of Plaintiff's federal FLSA claim remains intact, the Court denies without prejudice Defendants' request to decline supplemental jurisdiction over the state claims. The Court may reconsider this request depending upon the outcome of the parties' response to the Court's suggestion regarding judgment on Plaintiff's FLSA claim, below. *See* Part III, *infra*.

under the FLSA applies to the plaintiff." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019). "[A]ny gaps in the evidence work in plaintiff['s] favor. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012). "The question of how an employee spends his or her time working is one of fact, while the question of whether those work activities exempt him or her from the FLSA is one of law." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018).

Defendants point to the administrative exemption at 29 C.F.R. 541.200(a)[18] and also point to a particular subpart of the regulations dealing with purchasing agents, *see* 29 C.F.R. 541.203(f).[19] Yet Defendants offer no evidence of Plaintiff's job duties as she actually performed them. Instead, Defendants refer to representations both parties made on various immigration forms.[20] Notwithstanding the parties' written representations on materials submitted to immigration authorities, and any consequences that may fall upon those who chose to contradict them in this proceeding; these statements do not offer evidence of Plaintiff's actual job duties as she performed them. In the absence of such evidence, the Court is unable to

---

[18] The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
  (1) Compensated on a salary or fee basis at not less than the level set forth in § 541.600;
  (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
  (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.
29 C.F.R. § 541.200(a).

[19] "Purchasing agents with authority to bind the company on significant purchases generally meet the duties requirements for the administrative exemption even if they must consult with top management officials when making a purchase commitment for raw materials in excess of the contemplated plant needs." 29 C.F.R. 541.203(f).

[20] Mot. at 4–5; Hr'g Mot., Aug. 19, 2025.

identify, for example, Plaintiff's "primary duty." This inquiry, called for by the administrative exemption's plain language, requires examination of "the amount of time devoted to each task, the relative importance of each task, the degree of freedom from direct supervision, and the pay relative to subordinates." *Maestas* at 829 (citing 29 C.F.R. § 541.700). Defendants offer no evidence that might allow the Court to analyze these issues. Thus, Defendants fail to carry their burden of production because they offer no evidence of the actual activities Plaintiff engaged in during her work time.[21]

### III. The parties are ordered to respond, indicating whether judgment, or partial judgment, might be appropriate on Plaintiff's FLSA overtime claim

The factual record before the Court suggests that judgment might be appropriate on Plaintiff's FLSA overtime claim, or, at least, that the undisputed facts establish the maximum damages Plaintiff might recover on such claim at $15,854.10. "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Similarly, even if the Court does not grant judgment, "it may enter an order stating any material fact–including an item of damages or other relief–that is not genuinely in dispute and

---

[21] Defendants also refer to the Department of Labor's investigation of Defendant Asian Market Company, Inc., and invite the Court to infer an absence of any FLSA violation given the Department of Labor did not take any enforcement action related to Ms. Liu as a result of the investigation. Defendants offer no legal authority to support their requested inference. In the absence of such authority, the Court declines consider the investigation because it invites a host of problems under Federal Rule of Evidence 403. It would require, at a minimum, a miniature trial to determine what the Department of Labor investigated and whether that investigation was adequate to allow the inference Defendants seek. Such problems are already evident from the parties' briefing related to the investigation. *See* Mot. at 3–4; Opp'n at 2–6.

treating the fact as established in the case." Fed. R. Civ. P. 56(g).  Accordingly, the Court orders the parties to respond and indicate whether judgment is appropriate, in part in in whole, on Plaintiff's FLSA overtime claim.  In doing so, the parties should consider the Court's calculation and methodology set forth below.

Plaintiff asserts she was told she would be paid an hourly rate of, $20.82 per hour.[22]  Assuming this was true, she would be entitled to $832.80 at this rate for the first forty hours of work each week.  For the period from October 2020 to November 2021, her actual monthly pay averages out to $900 per week,[23] meaning she was paid and additional $67.14, which, under Plaintiff's theory, accounts for approximately 2.15 hours of overtime each week.[24]  If one subtracts the 42.15 hours for which Plaintiff claims she was compensated, from her claimed hours during this same period from October 2020 to November 2021, it appears Plaintiff claims she was not paid for a total of approximately 475.97 hours of overtime.[25]  At an overtime rate of $31.23 (hourly rate of $20.82 multiplied by 1.5), it appears Plaintiff could recover, at most, $14,864.53 for this period.

Turning next to the period from November 2021 to June 12, 2022 (the last date which Plaintiff claims compensable hours), Plaintiff's actual monthly pay averages out to $830.77 per

---

[22] Hr'g Mot., Aug. 19, 2025.  As noted previously, this is the maximum rate Plaintiff has claimed, not necessarily an undisputed rate.
[23] The Court calculates this by taking the $3,900 Plaintiff was paid monthly and dividing it by 4.33 weeks in an average month (52 weeks in a year, divided by 12 months).
[24] At an hourly rate of $20.82, Plaintiff's overtime rate (1.5 times ordinary pay) equals $31.23.  Taking $31.23 and multiplying by 2.15 hours amounts to $67.14.  Adding the $67.14 to Plaintiff's pay for forty regular hours ($832.80) amounts to $899.94.
[25] Plaintiff claims the amount of overtime worked in Exhibit A to the Amended Complaint (ECF No. 31-1), which she cites in her Declaration (ECF No. 55-1).  The Court recognizes this might not be an undisputed calculation.  If challenged, Defendants are reminded to cite any contrary evidence that exists in the record.

week,[26] which compensates Plaintiff for 39.9 hours (again assuming her claimed $20.82 hourly rate). Accordingly, in any week during the period from November 2021 to June 12, 2022, in which Plaintiff worked over forty hours, she appears to assert she is entitled to $2.08 for the tenth of an hour of regular time, plus $31.23 for any overtime. Plaintiff asserts she worked a total of approximately 31.42 hours of overtime during this period, spread among four different weeks, and was accordingly owed $981.25 for overtime, plus $8.32 in regular time. Accordingly, it appears Plaintiff could recover, at most, $989.57 for this period.

Combining the aggregate total amount of claimed underpayment for the entire relevant period from October 2020 until June 2022 amounts to $15,854.10. This appears, at least, to provide the potential maximum Plaintiff is able to recover for her FLSA claim in this case. The parties are instructed to respond to the Court's assessment here indicating: (1) whether judgment should be entered on Plaintiff's FLSA claim; (2) the amount of any such judgment; and (3) any basis in the record to contradict the Court's calculation of the maximum damage amount. The parties must support their argument with citations to facts in the record as well as legal authority, as expected in the context of any motion for summary judgment.

## **ORDER**

Based on the foregoing, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment (ECF No. 46).

IT IS FURTHER ORDERED that the parties must respond to the Court's suggestion that judgment on Plaintiff's FLSA claim might be appropriate, as set forth in Section III above, with

---

[26] The Court calculates this by taking the $3,600 Plaintiff was paid monthly and dividing it by 4.33 weeks in an average month (52 weeks in a year, divided by 12 months).

Plaintiff filing a brief within 21 days of this order and Defendants filing a responsive brief within 21 days of Plaintiff's deadline (in other words, 42 days from the date of this order). Failure to respond may result in the entry of judgment.

DATED this 10th day of September 2025.               BY THE COURT:

                                              Ann Marie McIff Allen
                                              United States District Judge